Jon A. Tostrud (Bar No. 199502)
**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East, Ste. 2100
Los Angeles, CA. 90067
Tel: (310) 278-2600
Fax: (310) 278-2640
Email: jtostrud@tostrudlaw.com

Thomas J. McKenna
Gregory M. Egleston
**GAINEY McKENNA & EGLESTON**
501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel:     (212) 983-1300
Fax:     (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN COSTELLO, Derivatively on Behalf of QUANTUMSCAPE CORPORATION, | CASE NO.:  5:21-CV-1370 |
| Plaintiff, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| v. | |
| JAGDEEP SINGH, FRITZ PRINZ, FRANK BLOME, BRAD BUSS, JOHN DOERR, JÜRGEN LEOHOLD, JUSTIN MIRRO, DIPENDER SALUJA, J.B. STRAUBEL, KEVIN HETTRICH, TIMOTHY HOLME, AND VOLKSWAGEN GROUP OF AMERICA INVESTMENTS, LLC, | |
| Defendants, | **JURY TRIAL DEMANDED** |
| QUANTUMSCAPE CORPORATION, | |
| Nominal Defendant | |

1

Plaintiff Kathleen Costello ("Plaintiff"), by and through her undersigned counsel, derivatively on behalf of Nominal Defendant QuantumScape Corporation ("QuantumScape" or the "Company"), submits this Verified Shareholder Derivative Complaint (the "Complaint"). Plaintiff's allegations are based upon her personal knowledge as to herself and her own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by QuantumScape with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTTION

1.     This is a shareholder derivative action brought on behalf of and for the benefit of QuantumScape, against certain of its officers and/or directors named as defendants herein seeking to remedy Defendants (defined below) violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), and their breaches of fiduciary duties and other wrongful conduct as alleged herein and that occurred from November 27, 2020 to the present (the "Relevant Period").   Defendants' actions have caused, and will continue to cause, substantial financial harm and other damages to the Company, including damages to its reputation and goodwill.

2.     The Company develops and commercializes solid-state lithium-metal batteries for electric vehicles ("EVs").   The Company was founded in 2010 and is headquartered in San Jose, California.   The Company was taken public through a combination with a special purpose acquisition corporation ("SPAC"), Kensington Capital Acquisition Corp. ("Kensington"), in a transaction completed on November 27, 2020.   Since then, the Company's Class A common stock has traded on the New York Stock Exchange ("NYSE") under the ticker symbol "QS" and its publicly traded warrants have traded on the NYSE under the ticker symbol "QS.WS."

3.     Throughout the Relevant Period, Defendants caused the Company to make

materially false and misleading statements about the strength of its business, operations and financial prospects.  In connection with their claims that the Company was "developing next generation battery technology for EVs and other applications," Defendants stated that they "believe[d] that [the Company's] technology [would] enable a new category of battery that meets the requirements for broader market adoption" and that the "lithium-metal solid-state battery technology that . . . QuantumScape is developing is being designed to offer greater energy density, longer life, faster charging, and greater safety when compared to today's conventional lithium-ion batteries."  Having overstated the value of the Company's business metrics and financial prospects, the Company was able to complete the combination with the Kensington and to commence an underwritten secondary public stock offering (the "SPO") of its publicly traded securities "at market price," registering for resale more than 300 million shares of the Company's publicly traded securities by insiders beginning on December 31, 2020, including several senior executives of the Company and the Company's controlling shareholder Volkswagen Group of America Investments, LLC ("VGA").

4.      The Company concealed multiple known risks with the Company's solid state battery development and design that rendered the batteries "completely unacceptable for real world field electric vehicle performance."  As would later be revealed, the power of the Company's batteries "will only last for 260 cycles or about 75,000 miles of aggressive driving" and, because solid state batteries are temperature sensitive, "power and cycle tests at 30 and 45 degrees above would have been significantly worse if run even a few degrees lower."

5.      On January 4, 2021, *Seeking Alpha* published a report that revealed the truth concerning the Company's false and misleading statements.  After the report was issued, the market prices of the Company publicly traded securities fell precipitously on those disclosures, with the price of the Company's Class A common stock declining more than 62%.

**JURISDICTION AND VENUE**

6.      Pursuant to 28 U.S.C. § 1331 and section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), this Court has jurisdiction over the claims asserted herein for violations of

1  sections 10(b) of the Exchange Act.  This Court has supplemental jurisdiction over the remaining

2  claims under 28 U.S.C. § 1367.

3       7.    This Court has jurisdiction over each defendant named herein because each

4  defendant is either a corporation that conducts business in and maintains operations in this District

5  or is an individual who has sufficient minimum contacts with this District to render the exercise

6  of jurisdiction by the District courts permissible under traditional notions of fair play and

7  substantial justice.

8       8.    Venue is proper in this District because QuantumScape's principal executive

9  offices are in this District. In addition, a substantial portion of the transactions and wrongs

10  complained of herein occurred in this District, the Defendants have conducted business in this

11  District, and Defendants' actions have had an effect in this District.

12  **PARTIES**

13  **Plaintiff**

14       9.    ***Plaintiff Kathleen Costello*** ("Plaintiff") acquired the Company securities and will

15  continue to hold QuantumScape shares throughout the pendency of this action.  Plaintiff purchased

16  her shares of Company stock on November 27, 2020.  Plaintiff will fairly and adequately represent

17  the interests of the shareholders in enforcing the rights of the corporation.

18  **Nominal Defendant**

19       10.    ***Nominal Defendant QuantumScape*** is a Delaware corporation with its principal

20  executive offices at 1730 Technology Drive, San Jose, California 95110.  The Company, in its

21  current form, came about as the result of a merger deal that closed on November 25, 2020 (the

22  "Merger") between Kensington Capital Acquisition Corp. ("Kensington"), to which the Company

23  is the successor, and a separate entity also called QuantumScape Corporation, which is now a

24  subsidiary of the Company ("Legacy QuantumScape").

25  **Director Defendants**

26       11.    ***Defendant Jagdeep Singh*** ("Singh") is the Company's Chief Executive Officer

27  ("CEO") and Chairman of the Board of Directors (the "Board") and has served in that role since

28

the Merger in November 2020.   Prior to the Merger, Defendant Singh co-founded Legacy QuantumScape where he served as the CEO and as a director from May 2010 until the Merger. Defendant Singh sold Company stock in the secondary public stock offering ("SPO").

12.     **Defendant Fritz Prinz** ("Prinz") has served as a Company director since the Merger in November 2020.  Prior to the Merger, Defendant Prinz had served as a director on the board of Legacy QuantumScape since December 2010, which he cofounded.   Defendant Prinz sold Company stock in the SPO.

13.     **Defendant Frank Blome** ("Blome") has served as a Company director since the Merger in November 2020.   Defendant Blome also serves as a member of the Company's Nominating and Corporate Governance Committee.  Prior to the Merger, he had served as a director on the board of Legacy QuantumScape since September 2020.

14.     **Defendant Brad Buss** ("Buss") has served as a Company director since the Merger in November 2020.  Defendant Buss also serves as Chair of the Audit Committee and as a member of the Compensation Committee.  Prior to the Merger, Defendant Buss had served as a director on the board of Legacy QuantumScape since August 2020.  Defendant Buss sold Company stock in the SPO.

15.     **Defendant John Doerr** ("Doerr") has served as a Company director since the Merger in November 2020.  Defendant Doerr also serves as a member of the Nominating and Corporate Governance Committee.  Prior to the Merger, Defendant Doerr had served as a director on the board of Legacy QuantumScape since December 2010.

16.     **Defendant Jürgen Leohold** ("Leohold") has served as a Company director since the Merger in November 2020.  Defendant Leohold also serves as Chair of the Compensation Committee.  Prior to the Merger, he had served as a director on the board of Legacy QuantumScape since May 2015. In addition, he served in various leadership positions including at Volkswagen from April 2006 until May 2019.  Defendant Leohold sold Company stock in the SPO.

17.     **Defendant Justin Mirro** ("Mirro") has served as a Company director since the Merger in November 2020.  Defendant Mirro also serves as the Chair of the Nominating and

Corporate Governance Committee, and as a member of the Audit Committee. Defendant Mirro sold Company stock in the SPO.

18.     **Defendant Dipender Saluja** ("Saluja") has served as a Company director since the Merger in November 2020.  Defendant Salalso serves as a member of the Audit Committee.  Prior to the Merger, Defendant Saluja had served as a director on the board of Legacy QuantumScape since August 2012.

19.     **Defendant J.B. Straubel** ("Straubel") has served as a Company director since the Merger in November 2020.  Defendant Straubel also serves as a member of the Compensation Committee.  Prior to the Merger, Defendant Straubel had served as a director on the board of Legacy QuantumScape since December 2019.  Defendant Straubel sold Company stock in the SPO.

20.     Defendants Singh, Prinz, Blome, Buse, Doerr, Leohold, Mirro, Saluja and Straubel are herein referred to as "Director Defendants."

**Officer Defendant**

21.     **Defendant Kevin Hettrich** ("Hettrich") has served as the Company's Chief financial Officer ("CFO") since the Merger in November 2020.  Prior to the Merger, Defendant Hettrich had served as the CFO at Legacy QuantumScape since September 2018, and prior to that he had served in various executive and management positions at Legacy QuantumScape since January 2012.  Defendant Hettrich sold Company stock in the SPO.

22.     **Defendant Timothy Holme** ("Holme") has served as the Company's Chief Technology Officer ("CTO") since the Merger in November 2020. Prior to the Merger, he had served as Chief Technology Officer ("CTO") at Legacy QuantumScape since January 2011, which he cofounded.  Defendant Holme sold Company stock in the SPO.

**Defendant Volkswagen Group of America Investments, LLC (VGA)**

23.     Defendant VGA is a Delaware limited liability company based in Herndon, Virginia.  It is a Volkswagen subsidiary.  According to the Prospectus, as of December 23, 2020, Defendant VGA beneficially owned 70,995,205 shares of the Company's Class A and Class B

common stock, representing 19.51% of the Company's outstanding Common Stock and 13.15% of total voting power, making VGA a controlling shareholder of QuantumScape. Moreover, Defendant VGA exercised the power to nominate two directors to the Company's Board, Defendant Blome, who the Company admits is a VGA affiliate through his employment with Volkswagen, and non-party Jens Wiese ("Wiese"), who joined the Board in January 2021 and is also affiliated with VGA through his employment with Volkswagen.  Defendant VGA offered up to 70,995,205 shares of the Company's Class A and Class B common stock in the SPO.

24.   The Director Defendants, Defendants Hettrich and Holme, and Defendant VGA are collectively referred to herein as "Defendants".

## THE COMPANY'S CORPORATE GOVERNANCE

25.   As members of Board, the Director Defendants were held to the highest standards of honesty and integrity and charged with overseeing the Company's business practices and policies and assuring the integrity of its financial and business records.

26.   The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that the Director Defendants were aware posed a risk of serious injury to the Company

## DUTIES OF THE DIRECTOR DEFENDANTS AND DEFENDANT VGA

27.   By reason of their positions as officers, directors, and/or fiduciaries of the Company and because of their ability to control the business and corporate affairs of the Company, the Director Defendants and Defendant VGA owed the Company and its shareholders the fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.  The Director Defendants and Defendant VGA were and are required to act in furtherance of the best interests of the Company and its shareholders.

28.   Each director and officer of the Company and Defendant VGA owe to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration

of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Director Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's operations, finances, financial condition, and present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

29.     The Director Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with the Company, each of the Defendants had access to adverse non-public information about the financial condition, operations, sales and marketing practices, and improper representations of the Company.

30.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of the Company were required to, among other things:

(a)     Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)     Conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and

accurate at all times;

(d)     Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e)     Ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f)     Ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

31.     Each Director Defendant, by virtue of his position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

32.     The Director Defendants and Defendant VGA breached their duties of loyalty and good faith by causing the Company to misrepresent the information as detailed *infra*.  The Director Defendants' and Defendant VGA subjected the Company to the costs of defending, and the potential liability from, the securities class action (and related lawsuits).  As a result, the Company has expended, and will continue to expend, significant sums of money.

33.     The Director Defendants' and Defendant VGA's actions have irreparably damaged the Company's corporate image and goodwill.

## **BACKGROUND**

34.     The Company was founded in 2010 by Defendants Singh, Prinz and Holme.

35.     In 2012, the Company began working with Volkswagen Group of America, Inc. ("Volkswagen") and VGA to develop an EV battery.  In 2018, Defendant VGA invested $100 million in the Company, becoming its largest shareholder. That same year, Volkswagen, Defendant VGA and QuantumScape announced the establishment of a joint production project to prepare solid-state batteries for mass production.  In June 2020, Defendant VGA made an additional $200 million investment into the Company.  As a result, Defendant VGA beneficially acquired approximately 25.53% of QuantumScape's Class A common stock and 11.51% of its Class B common stock then outstanding, representing 13.15% of the Company's total voting power.

36.     On September 3, 2020, the Company announced a merger with Kensington.  Upon completion of the transaction, the Company would receive $1 billion in financing, including funding from Defendant VGA and the Qatar Investment Authority.  At the same time, the Company's Class A common stock and warrants to purchase Class A common stock would be listed on the NYSE, respectively, under the ticker symbols "QS" and "QS.WS."  That transaction was completed on November 27, 2020.

## THE FALSE AND MISLEADING STATEMENTS

37.     On September 3, 2020, the Company and Kensington issued a joint press release announcing the merger of the Company with Kensington. The release described the Company as "a leader in the development of next generation solid-state lithium-metal batteries for use in electric vehicles," and stated that, "[i]n the decade since the company was founded, QuantumScape has been exclusively focused on developing solid-state batteries and designing a scalable manufacturing process to commercialize its battery technology for the automotive industry."  The release further stated that "QuantumScape believes the proceeds from this transaction will fully fund the company through the start of production via its joint venture with the Volkswagen Group." The release also highlighted the strength of the Company's battery technology:

Jagdeep Singh, Founder and Chief Executive Officer of QuantumScape, commented, "Today marks an important milestone of advancing QuantumScape's effort in developing ***the next generation of solid-state batteries to meet the needs of all future electric vehicles*** as the world transitions to zero emissions. Ten years ago, we embarked upon an ambitious goal that most thought was impossible. Through the tireless work of QuantumScape's more than 200 scientists and engineers, and our partnership with Volkswagen since 2012, we have developed a new battery technology that is unlike anything else in the world.  We are now excited to partner with Kensington's unique team of world-class automotive executives, who share our vision of a cleaner and safer future powered by QuantumScape.  This vote of confidence from investors, and the capital provided by this transaction, will drive a more sustainable future for generations to come."

Justin Mirro, Chairman and Chief Executive Officer of Kensington, who will join the combined company Board of Directors, added, "We are extremely excited and honored to partner with QuantumScape, as this represents a unique opportunity to invest in a pure-play battery company ***that is positioned to transform the auto industry.*** Kensington considered hundreds of automotive companies and QuantumScape stands out as ***the leading company to play a pivotal role in the advancement of electric vehicles***. Through the vision and leadership of Jagdeep Singh, QuantumScape has created a world-class team ***that is developing the next generation of solid-state batteries that will achieve the future performance requirements of leading vehicle manufacturers***. By combining QuantumScape with Kensington's deep industry expertise and capital from this transaction, we are confident that QuantumScape's investment thesis has been significantly enhanced."

\* \* \*

Former Tesla Chief Technology Officer and current QuantumScape board member JB Straubel commented, "QuantumScape's solid-state anode-less design represents the most elegant architecture I've seen for a lithium-based battery system, and ***the company has an opportunity to redefine the battery landscape***."

Venture capitalist, co-founder of Sun Microsystems, and current QuantumScape board member Vinod Khosla added, "When we backed QuantumScape ten years ago, we knew it was a bold vision to transform one of the world's largest industries. We are therefore thrilled that the team ***has developed technology that addresses the single largest cost component and deficiency of electric cars, the battery. By enabling greater range and much faster charge times***, we believe QuantumScape's technology will assist EVs in becoming significantly more competitive with traditional internal combustion engine vehicles, paving the way for greater adoption and a greener future."

"The merger with Kensington and associated PIPE transaction ***allows us to fund our business plans to first production***," continued Jagdeep Singh. "We look forward to executing on continued product development and validation ***through to first revenue*** and what we believe will be significant growth thereafter."  [Emphasis added].

38.     Defendant Mirro, the chairman and CEO of Kensington, opened a conference call held with investors and stock analyst that day stating:

> In our view, the single greatest mega-trend and structural paradigm shift in the automotive industry today is the advancement of electric mobility. Many global automobile manufacturers are accelerating their transition to electric vehicles, as reflected by the hundreds of billions of dollars expected to be invested into this sector over the next five years. Through the vision and leadership of founder and CEO, Jagdeep Singh, QuantumScape **is developing the next generation of solid-state lithium-metal batteries for use in these vehicles**. In doing so, QuantumScape is redefining the frontier of battery technology, and **positioning the company to play a pivotal role in the electrification of the global automotive fleet**.
>
> Kensington is an automotive-focused SPAC with more than 300 combined years of automotive experience leading some of the largest automobile manufacturers and suppliers in the world. **It is with this significant expertise that we underwent an extensive due diligence process to identify the best long-term investment for Kensington's shareholders**. Our search involved hundreds of prospects, and after several rounds of narrowing our focus on investment opportunities, QuantumScape emerged as the most attractive partner for us and a company that we firmly believe will shape the future of the auto industry.
>
> **Our process involved reviewing the technical, commercial, and financial results of QuantumScape and then using global automotive standards to validate the company's business plan.** [Emphasis added].

39.     Defendant Singh opened his remarks at the September 3, 2020 conference stating:

> I know I speak on behalf of the entire QuantumScape team when I say that I am delighted to announce this transaction with Kensington that **we expect will allow us to commercially deploy our disruptive battery technology for the benefit of many around the world**.
>
> We believe that a once-in-a-century event is in the early days of unfolding with the electrification of the automotive industry. Today, just 2% of all vehicles sold are electric. If electrification of the automotive powertrain were to reach its full potential, we see a battery industry that can generate hundreds of billions of dollars of revenue per year for the next several decades. Further, **our business is at the core of sustainability and addresses key ESG attributes that are so critical to so many, as our technology enables a reduction in global $CO_2$ emissions, is designed around abundant resources, and enables clean energy sources**.
>
> To further evolve the global electric vehicle landscape, we see the availability of a better battery as mission critical. At QuantumScape, we believe we have developed the key enabling technology that will propel this generational shift towards its full potential. **We have developed a proprietary solid-state separator, which forms the**

*heart of a solid-state battery, to construct our solid-state cells. Over the past decade, my team and I have focused exclusively on identifying and engineering the right materials to develop this technology and position us to achieve successful commercialization. We have also dedicated significant time and resources in designing a scalable manufacturing processes for producing and commercially deploying this battery technology.*

In fact, there is probably no greater vote of confidence than Volkswagen's announcement that they have decided to enter into a manufacturing joint venture with QuantumScape to prepare for mass production of these solid-state batteries for use by their company. Based on our engagement with VW, we believe we are the only company to have successfully developed such a technology with automotive OEM validation.

* * *

Turning back to our product and technology – *we believe our lithium-metal battery technology is a game changer. Our solid-state battery technology addresses the key limitations of traditional lithium-ion battery technology, and we think this positions EVs to be much more competitive with internal combustion engine vehicles that today account for 98% of all vehicles sold*. Our technology is supported by more than 200 patents, including patents pending, and extensive trade secrets. *These will be instrumental in keeping us ahead of the competitive curve.*

We believe our battery technology provides five key benefits as compared to traditional lithium-ion technology that makes our offering the ideal solution for use in electric vehicles:

- *Higher energy density*
- *Faster charge times*
- *Improved battery cycle life*
- *Enhanced safety, and*
- *Lower cost*

(Emphasis added).

40.     On November 27, 2020, the Company and Kensington issued a joint press release that day announcing the closing of the business combination and that the Company securities would begin trading on the NYSE that day.  The release again characterized the Company as "a leader in the development of next generation solid-state lithium-metal batteries for use in electric vehicles," further stating:

Since the company was founded in 2010, QuantumScape has been exclusively focused on developing solid-state batteries and designing a scalable manufacturing process to commercialize its battery technology for the automotive industry.

*Through its elegant "anode-less" design, QuantumScape's solid-state lithium-metal batteries are designed to be safer, and to deliver greater range, faster charge times and improved cycle life, than today's conventional lithium-ion battery technology.*

"Today marks a big step in the evolution of our company," commented Jagdeep Singh, Founder and Chief Executive Officer of QuantumScape. ***"This transaction allows QuantumScape to fund development and commercialization of our OEM-validated battery technology as we look forward to playing our part in the electrification of the automotive powertrain, helping transform one of the world's largest industries and fostering a cleaner future for all."***

Justin Mirro, Chairman and Chief Executive Officer of Kensington, added, "we are incredibly excited to complete our business combination with QuantumScape and to provide the company with significant capital and automotive guidance to accelerate its business plan. The adoption of electric vehicles has emerged as the global mega-trend in the automotive industry, and ***QuantumScape is now well positioned to become a leading supplier of solid-state batteries for this next generation of electric powertrains."*** [Emphasis added].

41.     On December 8, 2020, the Company issued a press release further detailing the purported strength of its battery technology:

***QuantumScape Releases Performance Data for its Solid-State Battery Technology***

*Data demonstrates high energy density solid-state lithium-metal battery technology that improves life, charging time, and safety*

. . . QuantumScape Corporation (NYSE: QS, or "QuantumScape"), a leader in the development of next generation solid-state lithium-metal batteries for use in electric vehicles (EVs), has released performance data ***demonstrating that its technology addresses fundamental issues holding back widespread adoption of high-energy density solid-state batteries, including charge time (current density), cycle life, safety, and operating temperature***.

A commercially-viable solid-state lithium-metal battery is an advancement that the battery industry has pursued for decades, as it holds the promise of a step function increase in energy density over conventional lithium-ion batteries, enabling electric vehicles with a driving range comparable to combustion engine based vehicles. ***QuantumScape's solid-state battery is designed to enable up to 80% longer range compared to today's lithium-ion batteries***. Previous attempts to create a solid-state separator capable of working with lithium metal at high rates of power generally required compromising other aspects of the cell (cycle life, operating temperature, safety, cathode loading, or excess lithium in the anode).

QuantumScape's newly-released results, based on testing of single layer battery cells, *show its solid-state separators are capable of working at very high rates of power, enabling a 15-minute charge to 80% capacity, faster than either conventional battery or alternative solid-state approaches are capable of delivering. In addition, the data shows QuantumScape battery technology is capable of lasting hundreds of thousands of miles and is designed to operate at a wide range of temperatures, including results that show operation at -30 degrees Celsius*.

The tested cells were large-area single-layer pouch cells in the target commercial form factor with zero excess lithium on the anode and thick cathodes (>3mAh/cm2), running at rates of one-hour charge and discharge (1C charge and 1C discharge) at 30 degrees Celsius.  These *tests demonstrated robust performance of these single layer pouch cells even at these high rates, resulting in retained capacity of greater than 80% after 800 cycles (demonstrating high columbic efficiency of greater than 99.97%)*.

"The hardest part about making a working solid-state battery is the need to simultaneously meet the requirements of high energy density (1,000 Wh/L), fast charge (i.e., high current density), long cycle life (greater than 800 cycles), and wide temperature-range operation. This data *shows QuantumScape's cells meet all of these requirements*, something that has never before been reported. If QuantumScape can get this technology into mass production, *it holds the potential to transform the industry*," said Dr. Stan Whittingham, co-inventor of the lithium-ion battery and winner of the 2019 Nobel prize in chemistry.

"*These results blow away what was previously thought to be possible in a solid-state battery*," said Venkat Viswanathan, battery expert and professor of materials science at Carnegie-Mellon University. "Supporting high enough current density to enable fast charge without forming dendrites has long been a holy grail of the industry. This data *shows the capability to charge to 80% capacity in 15 minutes, corresponding to an astonishingly high rate of lithium deposition of up to a micron per minute.*"

"We believe that the performance data we've unveiled today *shows that solid-state batteries have the potential to narrow the gap between electric vehicles and internal combustion vehicles and help enable EVs to become the world's dominant form of transportation*," said Jagdeep Singh, founder & CEO of QuantumScape. "Lithium-ion provided an important stepping stone to power the first generation of EVs. We believe QuantumScape's lithium-metal solid-state battery technology *opens the automotive industry up to the next generation battery and creates a foundation for the transition to a more fully electrified automotive fleet.*"

\* \* \*

Beyond its ability to function at high rates of power while delivering high energy density, other key characteristics of QuantumScape's solid-state lithiummetal battery technology include:

- **Zero excess lithium**: In addition to eliminating the carbon or carbon/silicon anode, QuantumScape's solid-state design further increases energy density because it uses no excess lithium on the anode. Some previous attempts at solid-state batteries used a lithium foil or other deposited-lithium anode, which reduces energy density.

- **Long life**: Because it eliminates the side reaction between the liquid electrolyte and the carbon in the anode of conventional lithium-ion cells, QuantumScape's battery technology is designed to last hundreds of thousands of miles of driving. Alternative solid-state approaches with a lithium metal anode typically have not demonstrated the ability to work reliably at close to room temperatures (30 degrees Celsius) with zero excess lithium at high current densities (>3mAh/cm2) for more than a few hundred cycles, and result in a short-circuit or capacity loss before the life target is met. By contrast, today's test results show that QuantumScape's battery technology is capable of running for over 800 cycles with greater than 80% capacity retention.

- **Low-temperature operation**: QuantumScape's solid-state separator is designed to operate at a wide range of temperatures, and it has been tested to -30 degrees Celsius, temperatures that render some other solid-state designs inoperable.

- **Safety**: QuantumScape's solid-state separator is noncombustible and isolates the anode from the cathode even at very high temperatures – much higher than conventional organic separators used in lithium-ion batteries.   [Emphasis added].

42.     On December 17, 2020, the Company filed a registration statement with the SEC on Form S-1 registering for resale 305,114,065 shares of QuantumScape Class A common stock and another 6,650,000 warrants to purchase shares of QuantumScape Class A common stock. After several amendments, the registration statement was declared effective by the SEC on December 31, 2020 and the SPO commenced.  Among other existing shareholders, the SPO registration statement registered for resale more than 49.5 million shares by Defendants Singh and Prinz collectively, 2.6 million shares by Defendant Hettrich, more than 15 million shares by Defendant Holme, and approximately 71 million shares by Defendant VGA.

43.     Each of the statements set forth in ¶¶ 37-42 were materially false and misleading when made because they misrepresented and/or omitted material facts necessary to make the

statements made not misleading. These material facts, which were known to or recklessly disregarded by each of the Defendants, were: (a) that the Company's battery technology was not sufficient for electric vehicle performance as it would not be able to withstand the aggressive automotive environment; (b) that the Company's battery technology likely provided no meaningful improvement over existing battery technology; (c) that the successful commercialization of the Company's battery technology was subject to much more significant risks and uncertainties than the Company had disclosed; and (d) as a result of the foregoing, defendants materially overstated the value and prospects of the Company's battery technology.

44. On January 4, 2021, *Seeking Alpha* published a research report entitled "QuantumScape's Solid State Batteries Have Significant Technical Hurdles To Overcome." The introduction of the *Seeking Alpha* report emphasized that "QuantumScape's science is very good," "[b]ut their batteries are small and unproven – not yet as big as an iWatch battery, and never tested outside a lab," adding that "[t]here are significant risks associated with solid state batteries that have not been overcome – a list below," and emphasizing that "[t]hey will likely never achieve the performance they claim."

45. Detailing the "Areas of Overstated Success," the *Seeking Alpha* report stated:

All of these areas below are described as successful, because they are much better than has been achieved with solid state batteries in the past. But they are completely unacceptable for real world field electric vehicle performance.

• **Power**: They have done 1200 cycles of a 90 second OEM specified track simulation, which pulled pulses of 6C. In this track, 9 laps is full depth of discharge, when the battery was heated to 45 degrees C (113 degrees F) and charged to 80% in 15 minutes. The cell lost about 10% of its capacity in this 130 cycle test, meaning the battery will only last for 260 cycles or about 75,000 miles of aggressive driving. There is a note on the slide that it occurs at 3.4 atm, which likely means at high pressure. I'll comment on this later.

• **Range**: In much gentler, 1C / 1C cycling at 30 degrees C, the cell makes it for 800 cycles, or 240,000 miles. Respectable, but not better than the vehicles on the road today.

• **Low Temperature Operation**: They show discharge curves at 0 to -30 degrees Celsius, achieving 90 - 130 Wh/kg. Since their battery has >400 Wh/kg, the range is from 25 - 30% of the battery capacity available in the winter, or about

75-100 miles at full capacity. Also, note that the temperature capability of solid state batteries is VERY temperature sensitive – thus the power and cycle tests at 30 and 45 degrees above would have been significantly worse if run even a few degrees lower.

- **Low Temperature Life**: They show 100 or so cycles at -10 degrees C. Respectable, except that these cycles are at C/5 charge and C/3 discharge Thus, not 80% in 15 minutes, but rather 5% charge in 15 minutes.

- **Energy Density**: They talk about being able to get to an energy density of 400 Wh/kg, which would be great. However, they clearly have not yet, as all their graphs are normalized to 100%, not to an actual capacity. And Amprius is already making cells with 450 Wh/kg, and Tesla claimed on their Battery Day that they could achieve 350 Wh/kg. So, while nice, this energy density they hope to achieve in 2028 will not beat today's state of the art, and will not be state of the art when it is achieved.

46.     Detailing certain "Other Significant Challenges," the *Seeking Alpha* report stated:

There are other challenges they do not mention, which will have to be overcome before they can put the first car in the field. Remember that they have spent $300 million so far, so these are not challenges that they didn't have the resources to address, but rather ones they have not solved yet and so remain silent about. Many of these are related and come from the fact that they are using a brittle, ceramic electrolyte. These include:

- **Multi-layer cells**: They have been unable to make multi-layer cells. My expectation is that it is because of the unstable interface between the cathode, which expands as much as 10% on discharge, and the solid state electrolyte, which will not expand at all. They likely do their cycling under high isostatic pressure (remember the 3.4 atm mentioned earlier?), which will not flow through to inner layers. The inner layers will also be more rigidly constrained, so suffer more from the interfacial decay with cycling. Needless to say, 100,000 of their tiny pouch cells will never make a practical vehicle. It's important to mention here that, if your technology works, making a multilayer pouch cell is an easy afternoon's work.

- **Vibration and Dendrites**: The electrolyte is very, very stiff. It is well documented that dendrites will not grow through solid, single crystal garnet electrolytes. However, they grow freely at grain boundaries and defects. In their pristine, temperature and pressure controlled and vibration-free labs, they can get the cells to cycle. But in a rugged SUV or on our terrible South Carolina roads, cracks and other defects will become plentiful and dendrites will grow. This will in the best case destroy cycle life, and in the worst cause the battery to explode.

- **Lithium Metal Ignition**: They tout using lithium metal to increase energy density. But they don't mention that lithium metal auto-ignites at 179 degrees Celsius, generating 200 - 300 kJ/mol, or 30 - 40 kJ/g, a massive amount of energy

– about three times higher than ethylene carbonate, a common component of lithium ion electrolytes. Pure lithium is the second most energetic element behind beryllium, and could be used as a component of rocket fuel (with an oxidant). In essence, they have replaced a burning separator and electrolyte for a much more flammable and energetic burning anode. There is plenty enough energy in the battery to raise the lithium to its ignition temperature, and if exposed to oxygen or water, it will likely ignite itself. There is plenty of oxygen available in the cathode materials.

- **Cost**: They claim lower cost, but are actually eliminating only one of the least expensive components – graphite. While this is true, they will have the added cost of building up their thin ceramic electrolyte and sintering it at high temperatures. My guess is that early on, their yields will be just terrible, if they can achieve production scale at all. (Emphasis in original).

47.    The *Seeking Alpha* report provided a "Summary":

Given their success so far and their access to capital, I do think QuantumScape will succeed in getting a battery to market. However:

- It will have lower energy density than Amprius has achieved today.

- It will likely first show up in watches and wearables, then maybe phones.

- It will take much longer and cost much more to scale than they think.

- It will not be able to withstand the aggressive automotive environment.

- It will be far more expensive than today's lithium ion batteries, and will likely never achieve lower cost than contemporary lithium ion batteries.

- Once a suitable cell size is made, it may not be any safer than today's lithium ion batteries.

48.    The *Seeking Alpha* report was authored by Dr. Brian Morin, who is currently CEO of Soteria Battery Innovation Group, a company that also makes lithium ion batteries. He also serves as Director and Vice President of the National Alliance for Advanced Technology Batteries. Dr. Morin has a PhD in materials physics from the Ohio State University and has authored over 250 global patent applications on subjects including molecular magnets, plastics additives, textiles, advanced fibers, textiles and lithium ion batteries. Applying his specialized education, training, experience and specialized knowledge of science, Dr. Morin examined QuantumScape's technological claims and statements about is technological and manufacturing strategies and

offerings to arrive at his conclusions.

49.     The market prices of the Company's securities have fallen precipitously on these disclosures, with the price of the Company's Class A common stock declining more than 63% from its Relevant Period high of more than $131 per share on December 22, 2020 to close down at $49.96 per share on January 4, 2020, including a precipitous one-day decline of more than $34 per share, or 41%, on January 4, 2020, on unusually high trading volume of more than 82 million shares traded, or four times the average daily volume over the already volatile preceding ten trading days.

### DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

146.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of Defendants' violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), and their breaches of fiduciary duties and other wrongful conduct as alleged herein and that occurred during the Relevant Period.

147.     Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

148.     Plaintiff is a current owner of the Company stock and has continuously been an owner of Company stock during the Relevant.  Plaintiff understands her obligation to hold stock throughout the duration of this action and is prepared to do so.

149.     Because of the facts set forth herein, Plaintiff has not made a demand on the Board of the Company to institute this action against the Director Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

150.     At the time this suit was filed, the Board was comprised of ten (10) members -- Singh, Prinz, Blome, Buss, Doerr, Leohold, Mirro, Saluja, and Straubel, and nonparty Wiese. Thus, Plaintiff is required to show that a majority of Defendants, *i.e.*, five (5), could not exercise

independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

151.   Demand is excused as to all of the named Director Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material facts, while at least two and as many as six of them sold shares at inflated prices as part of the SPO, which renders them unable to impartially investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

152.   The Director Defendants face a substantial likelihood of liability in this action because they caused the Company to issue false and misleading statements concerning the information described herein.  Because of their advisory, executive, managerial, and directorial positions with the Company, the Director Defendants had knowledge of material non-public information regarding the Company and were directly involved in the operations of the Company at the highest levels.

153.   The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

154.   The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this Complaint, Plaintiff did not make (and was excused from making) a pre-filing demand on the Board to initiate this action because making a demand would have been a futile and useless act.

155.   Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

156.     Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

157.     Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

### <u>THE DIRECTOR DEFENDANTS WERE NOT INDEPENDENT</u>

**Defendant Singh**

158.     Defendant Singh is the CEO of the Company.  Defendant Singh is also the Chairman of the Board of the Company.  Defendant Singh is not disinterested or independent, and therefore, is incapable of considering demand because Defendant Singh (as CEO) is an employee of the Company who derives substantially all of his income from his employment with the Company, making him not independent.  As such, Singh could not independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would have exposed him to liability and threaten his livelihood.

159.     This lack of independence and financial benefits received by Defendant Singh renders him incapable of impartially considering a demand to commence and vigorously prosecute this action.  Further, Defendant Singh is a defendant in the securities class action entitled *Gowda v. QuantumScape Corporation, et al.*, Case 4:21-cv-00070-JST (N.D. Cal.) ("*Gowda* Securities Class Action") and *Malriat v. QuantumScape Corporation, et al.*, Case 3:21-cv-00058 (N.D. Cal.) (collectively, "Securities Class Actions).

160.     In addition, Defendant Singh sold shares at inflated prices in the SPO. Additionally, he and Defendants Prinz, Holme, Hettrich, Blome, Buss, Doerr, Leohold, Saluja, and Straubel all served simultaneously at Legacy QuantumScape, in various capacities.

**Defendant Prinz**

161.    Defendant Prinz is a defendant in the *Gowda* Securities Class Action.  Defendant Prinz signed the Registration Statement and the two subsequent amendments thereto, rendering him personally responsible for the false and misleading statements contained therein.

162.    Further, Defendant Prinz and Defendants Singh, Holme, Hettrich, Blome, Buss, Doerr, Leohold, Saluja, and Straubel all served simultaneously at Legacy QuantumScape, in various capacities.

**Defendant Blom**

163.    Defendant Blome is an affiliate of Defendant VGA, having been nominated to the Board by it and having served as Head of Volkswagen's Battery Center of Excellence since January 2018.  In light of this position, Defendant Blome is beholden to Defendant VGA and cannot independently or disinterestedly consider an action against it.

164.    Defendant Blome signed the Registration Statement and the two subsequent amendments thereto, rendering him personally responsible for the false and misleading statements contained therein.  As a trusted Company director, Defendant Blom conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets.

165.    In addition, Defendant Blom and Defendants Singh, Prinz, Holme, Hettrich, Buss, Doerr, Leohold, Saluja, and Straubel all served simultaneously at Legacy QuantumScape, in various capacities.

**Defendant Buss**

166.    Defendant Buss signed the Registration Statement and the two subsequent amendments thereto, rendering him personally responsible for the false and misleading statements contained therein.  As a trusted Company director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets.

167.     Further, Defendant Buss is listed in the Prospectus as offering shares of Company common stock in the SPO.  Moreover, Defendant Buss and Defendants Singh, Prinz, Holme, Hettrich, Blome, Doerr, Leohold, Saluja, and Straubel all served simultaneously at Legacy QuantumScape, in various capacities.  For these reasons, Defendant Buss breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Doerr**

168.     Defendant Doerr signed the Registration Statement and the two subsequent amendments thereto, rendering him personally responsible for the false and misleading statements contained therein.  As a trusted Company director, Defendant Doerr conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  Moreover, Defendant Doerr and Defendants Singh, Prinz, Holme, Hettrich, Blome, Buss, Leohold, Saluja, and Straubel all served simultaneously at Legacy QuantumScape, in various capacities, as is detailed further below.  For these reasons, Defendant Doerr breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Defendant Leohold**

169.     Defendant Leohold has served as a Company director since the Merger in November 2020.  Defendant Leohold also serves as Chair of the Compensation Committee.  Prior to the Merger, he had served on the board of Legacy QuantumScape since May 2015, alongside with Defendants Singh, Prinz, Doerr, and Saluja.  Moreover, Defendant Leohold served in various executive, management, and consulting positions with Volkswagen from April 2006 to May 2019.  Defendant Leohold is entitled to significant compensation for his role at the Company.  He signed the Registration Statement and the two subsequent amendments thereto, rendering him personally responsible for the false and misleading statements contained therein.  As a trusted Company

director, he conducted little, if any, oversight of the scheme to cause the Company to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets.  In addition, he is listed in the Prospectus as offering shares of Company common stock in the SPO.  Moreover, Defendant Leohold and Defendants Singh, Prinz, Holme, Hettrich, Blome, Buss, Doerr, Saluja, and Straubel all served simultaneously at Legacy QuantumScape, in various capacities, as is detailed further below.  For these reasons, Defendant Leohold breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

**Audit Committee Defendants – Buss, Mirro, and Saluja**

170.    Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for among other things, overseeing the quality and integrity of the Company's financial statements, the Company's compliance with laws and regulations, and the Company's system of internal controls.

171.    Defendants Buss, Mirro, and Saluja breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failed to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  Therefore, Defendants Buss, Mirro, and Saluja face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

**Intertwining Business Relationships**

172.    Defendants Singh, Prinz, Holme, Hettrich, Blome, Buss, Doerr, Leohold, Saluja, and Straubel all served simultaneously at Legacy QuantumScape, rendering them unable to independently and disinterestedly consider this action against themselves and the other Individual Defendants.

173.     Defendant Singh began serving as Chairman of Legacy QuantumScape's board, and served as CEO, since May 2010.   Thereafter, Defendant Singh was joined on Legacy QuantumScape's board by Defendants Prinz and Doerr, in December 2010.

174.     Defendant Holme then joined Legacy QuantumScape as CTO in January 2011, a role he continues to hold at the Company.

175.     Defendant Hettrich joined Legacy QuantumScape a year later in January 2012, serving in various managerial and executive positions culminating in his being named CFO in September 2018, a role he continues to hold with the Company.

176.     Shortly after Defendant Hettrich joined Legacy QuantumScape, Defendant Saluja, too, joined, as a director, in August 2012. This was followed three years later by Defendant Leohold joining the board of Legacy QuantumScape, in May 2015, while he was still working at Volkswagen, where he would continue to work while serving on the Board for four more years.

177.     Defendant Straubel is added to the board of Legacy QuantumScape in December 2019, followed by Defendant Buss in August 2020.

178.     Defendants Singh, Prinz, Doerr, and Holme have worked together for a decade or more, and Defendant Holme, Hettrich, and Saluja have worked with them for fairly close to that. These conflicts of interest precluded these Defendants from adequately monitoring the Company's operations and internal controls and calling into question these Defendants' conduct.

## COUNT I

### (Against the Director Defendants for Violations of

### Sections 10(b) and 21D Of The Exchange Act)

179.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

180.     The Company, along with Defendants Singh, Prinz, Holme, Hettrich and VGA are named as defendants in the Securities Class Actions, which assert claims under the federal securities laws for violations of Sections 10(b) and 21D of the Exchange Act.  If and when the Company is found liable in the Securities Class Action for these violations of law, the Company's

liability will be in whole or in part due to Defendants Singh, Prinz, Holme, Hettrich and VGA's willful and/or reckless violations of their obligations as an officer and director of the Company.

181.    Through their positions of control and authority as officers of the Company, Defendants Singh, Prinz, Holme, Hettrich and VGA were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts described in the Securities Class Actions and herein.

182.    As such, Defendants Singh, Prinz, Holme, Hettrich and VGA are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

## COUNT III

### (Against the Director Defendants and Defendant VGA for Breach of Fiduciary Duty)

183.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

184.    The Director Defendants and Defendant VGA owed the Company fiduciary obligations.  By reason of their fiduciary relationships, the Director Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

185.    The Director Defendants and Defendant VGA violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

186.    The Director Defendants and Defendant VGA engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, the Director Defendants and Defendant VGA breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to estimate its reserves set aside for annuity and pension payments, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and

1   deficiencies described above.  These actions could not have been a good faith exercise of prudent

2   business judgment to protect and promote the Company's corporate interests.

3       187.    As a direct and proximate result of the Director Defendants' and Defendant VGA's

4   failure to perform their fiduciary obligations, the Company has sustained significant damages.  As

5   a result of the misconduct alleged herein, the Director Defendants are liable to the Company.

6       188.    As a direct and proximate result of the Director Defendants' and Defendant VGA's

7   breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also

8   to its corporate image and goodwill.  Such damage includes, among other things, costs associated

9   with defending and/or settling securities lawsuits and governmental investigations, severe damage

10  to the share price of the Company's stock, resulting in an increased cost of capital, and reputational

11  harm.

12  **COUNT IV**

13  **(Against the Director Defendants for Waste of Corporate Assets)**

14      189.    Plaintiff incorporates by reference and realleges each and every allegation

15  contained above, as though fully set forth herein.

16      190.    The wrongful conduct alleged regarding the issuance of false and misleading

17  statements was continuous, connected, and on-going throughout the Relevant Period.  It resulted

18  in continuous, connected, and ongoing harm to the Company.

19      191.    As a result of the misconduct described above, the Director Defendants wasted

20  corporate assets by, inter alia: (i) paying excessive compensation, bonuses, and termination

21  payments to certain of its executive officers; (ii) awarding self-interested stock options to certain

22  officers and directors; and (iii) incurring potentially millions of dollars of legal liability and/or

23  legal costs to defend and/or settle actions addressing Defendants' unlawful actions.

24      192.    As a result of the waste of corporate assets, the Director Defendants are liable to

25  the Company.

26      193.    Plaintiff, on behalf of QuantumScape, has no adequate remedy at law.

27  **PRAYER FOR RELIEF**

28

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(A) Declaring that Plaintiff may maintain this action on behalf of the Company and that Plaintiff is an adequate representative of the Company;

(B) Finding Defendants liable for breaching their fiduciary duties owed to the Company;

(C) Directing Defendants to take all necessary actions to reform and improve the Company's corporate governance, risk management, and internal operating procedures to comply with applicable laws and to protect the Company and its stockholders from a repeat of the rampant wrongful conduct described herein;

(D) Awarding damages to the Company for the harm the Company suffered as a result of the Defendants' wrongful conduct;

(E) Awarding damages to the Company for Defendants Singh and Prinz's violations of Section 10(b) of the Exchange Act;

(F) Awarding Plaintiff the costs and disbursements of this action, including attorneys', accountants', and experts' fees; and

(G) Awarding such other and further relief as is just and equitable.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 25, 2021

**TOSTRUD LAW GROUP, P.C.**

By: /s/ Jon A. Tostrud
    Jon A. Tostrud
1925 Century Park East, Ste. 2100
Los Angeles, CA. 90067
Tel: (310) 278-2600
Fax: (310) 278-2640
Email: jtostrud@tostrudlaw.com

Thomas J. McKenna
Gregory M. Egleston
**GAINEY McKENNA & EGLESTON**

501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel:    (212) 983-1300
Fax:    (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

***Attorneys for Plaintiff***

## **VERIFICATION**

I, KATHLEEN COSTELLO, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of QUANTUMSCAPE CORPORATION ("QuantumScape") and authorize its filing.    I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true.  As to those allegations of which I do not have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true.  I further declare that I am a current holder, and have been a holder, of QuantumScape as set forth in the Complaint.

Executed this ___11___ day of February 2021.

KATHLEEN COSTELLO